UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 1:09-CR-0288 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE ANN ALDRICH |
| | ) | |
| HARRY JAMES TERRELL, JR., | ) | |
| | ) | |
| Defendant. | ) | MEMORANDUM AND ORDER |
| | ) | |
| | ) | |

Before the court is Harry James Terrell, Jr.'s motion to suppress [dkt. 21]. On November 13, 2009 the court held a hearing on the motion.

For the following reasons, the court denies Terrell's motion to suppress.

## I. BACKGROUND

On May 28, 2009 Officer Joshua McCoy of the Amherst, Ohio Police Department was driving westbound on Ohio State Route 2. At approximately 8:49 p.m., Officer McCoy observed a white Cadillac with tinted windows traveling eastbound on the same road.

Officer McCoy turned the patrol car around in the median of the highway and began following the white Cadillac for a short period of time, where he also observed the vehicle cross over the solid single yellow line on the left side of the road.[1] Officer McCoy then activated his overhead lights to

---

[1] The affidavit attached to the criminal complaint [dkt. 1-1, at 2], the motion to suppress [dkt. 21-1, at 2], the government's response [dkt. 30, at 2], and the reply brief [dkt. 31, at 6] all state that Officer McCoy observed Terrell's vehicle cross the fog line, which is the solid white line on the right side of road. Officer McCoy's testimony that Terrell's vehicle drift left of the solid yellow line of the left side of the road is consistent with the video taken from the patrol car when the stop was initiated. However, such inconsistencies, while perhaps only a confusion of terminology, are not material as the court does not rely on any breach of either the fog or center lines in its decision to deny the motion to suppress.

initiate the stop; this also caused the dashboard-mounted video camera in Officer McCoy's patrol car to begin recording the stop.

Once stopped, Officer McCoy approached the passenger side of the vehicle. When the window was opened, Office McCoy immediately smelled a strong odor of raw marijuana. There were two occupants in the vehicle; the driver was identified as Henry James Terrell, Jr. and the passenger was his daughter, Nicole Terrell. Officer McCoy did a criminal records check from his patrol car, which revealed that Terrell had a suspended license and two warrants for his arrest. Terrell was asked if there was marijuana or weapons in the vehicle. Terrell indicated that both were present in the vehicle. Terrell was placed under arrest, and a subsequent search of the vehicle revealed two bags of green marijuana underneath the drivers seat and a .380 caliber Cobra Enterprises semi-automatic pistol. Terrell is charged with one count of felony in possession in violation of 18 U.S.C. § 922 and one count of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841.

Terrell seeks to suppress the evidence derived from the search of the vehicle, alleging that Officer McCoy lacked probable cause or reasonable suspicion to stop Terrell.

## II. LAW AND ANALYSIS

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Supreme Court has held that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996).
Indeed, Terrell acknowledges that police officers have broad discretion to "stop motorist observed to be violating traffic laws" but that such authority is "not unlimited." [Dkt. 21-1, at 3].

Here, Officer McCoy stopped Terrell because he observed Terrell operating a vehicle in

violation of Amherst Codified Ordinance 337.28, which prohibits window tinting material that "has a light transmittance of less than fifty per cent plus or minus three per cent." Officer McCoy testified that his education, training, and experience allowed him to determine that Terrell's vehicle was in violation of Amherst traffic laws. Further testing by a light-meter confirmed that the tint on Terrell's windows was eighteen percent, well bellow fifty percent requirement.

The Sixth Circuit recently addressed a very similar situation, and upheld the stop of the defendant's vehicle:

> [T]he officers observed the dark tinting on the Cadillac and estimated that the tinting would permit only about thirty-three percent of the light to pass through the windows, despite applicable law requiring window tinting to allow at least fifty percent of the light to pass through. *See* Ohio Rev.Code § 4513.241; Ohio Admin. Code § 4501-41-03(A)(3). The officers were aware that the tinting was illegally dark based on their substantial prior experience enforcing this traffic regulation; indeed, the traffic stop that they just concluded before stopping Shank was for the same infraction. Due to the officers' familiarity with window tinting and their estimate that the vehicle was tinted substantially darker than permitted by law, we agree with the district court's determination that the officers had a proper basis to initiate the traffic stop.

*United States v. Shank*, 543 F.3d 309, 313 (6th Cir. 2008).

Terrell argues that it "strains credulity" to believe that Officer McCoy was able to observe Terrell's tinted windows given that both Terrell's vehicle and Officer McCoy's patrol car were heading in opposition directions and traveling at highway speeds during dusk with an overcast sky. Terrell asserts that "[m]erely observing from across the highway that the white Cadillac. . . had tinted windows did not create probable cause or reasonable suspicion to believe that Terrell was committing or had committed a civil traffic violation." [Dkt. 21-1, at 5]. However, this argument assumes that probable cause had to exist the moment Officer McCoy turned his patrol car around. As Officer McCoy followed Terrell, he was able to more closely observe the tinted windows and continue to develop probable cause.

As in *Shank*, Officer McCoy's experience allowed him to determine, and later verify with the light-meter, that the window tint was below the fifty percent limitation.

At the suppression hearing, Terrell and the government played portions of the video recording taken from the patrol car during the stop. Using the video, Terrell argued that the headlights of oncoming traffic were visible through the tinted back window. However, the visibility of headlights through a tinted window is not inconsistent with having illegally tinted windows. The law does not simply prohibit windows that are tinted one hundred percent, but prohibits windows with tints limiting greater than fifty percent of light transmittance. Thus, even with eighteen percent light transmittance, headlight and other objects may still be visible through the tinted glass.

Finally, at the suppression hearing, Terrell insinuated that the stop was motivated by improper and illegal factors, such as race, or that he was the subject of select enforcement. However, no evidence was provided to further these insinuations. If Terrell believes his stop was discriminatory in any way, the "constitutional basis for objecting to intentionally discriminatory application of law is the Equal Protection clause, not the Fourth Amendment." *Whren*, 517 U.S. at 813. Police motivations "play no role in ordinary, probable-cause Fourth Amendment analysis." *Id*.

**III. CONCLUSION**

Officer McCoy had probable cause to stop Terrell's vehicle. Accordingly, Terrell's motion to suppress is denied.

    /s/*Ann Aldrich*
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

**Dated:** November 20, 2009